**F. M. ROSS, Appellant,**

v.

**T. C. BATESON CONSTRUCTION COMPANY, Appellee.**

No. 17678.

United States Court of Appeals
Fifth Circuit.

Oct. 9, 1959.

---

Hugh A. Locke, Birmingham, Ala., for appellant.

Reid B. Barnes, James O. Haley, Birmingham, Ala., Oliver A. Fountain, Dallas, Tex., Brundidge, Fountain, Elliott & Bateman, Dallas, Tex., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel, for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal presents the question of whether the appellant's cause of action is barred by a former suit. The lower court held that the prior suit barred this action and granted the appellee's motion for a directed verdict. We reverse and remand.

The T. C. Bateson Construction Company, appellee-defendant, contracted to construct four warehouses for the United States Government at Anniston Ordnance Depot, Anniston, Alabama. F. M. Ross, appellant-plaintiff, a subcontractor, agreed to excavate, clear, and grub land, and to excavate footings and backfilling for the general contractor, Bateson. The subcontract stipulated that time was of essence. The parties contemplated that Ross' work would be completed in four months. Ross commenced work in August, 1952. He completed approximately eighty-five percent of the work within four or five months. Ross' work was of such a nature that he had to wait on Bateson's performance. Because of delays on the part of Bateson the final excavating and filling was not completed for fourteen or fifteen months. Ross suffered severe financial loss because of this delay, to the extent that in May 1953 it was necessary for his surety, Seaboard Surety Company, to take over his business and finish the job. Ross remained as trustee until the work was completed, October 1954.

The government's decision to change the location of one of the warehouses was partly the cause of the delay. This change necessitated additional work on the part of Ross, because the dirt of the new location was difficult to excavate. The government acknowledged that the contract should be renegotiated. Ross and Bateson traveled to Mobile, Alabama, where a conference was held with the project engineer for the government. The parties agreed that Ross was entitled to an adjustment in the contract price amounting to an increase of approximately $45,000. Bateson was to submit this figure on the next estimate to the government. Bateson did not submit the increase to the government until after the completion of the job, and the $45,000 was not paid until a judgment was obtained against Bateson.

After the completion of the construction job, Yancey Bros., Inc., a materialman, filed a suit in the United States District Court for the Northern District of Alabama against Bateson under the Miller Act, 40 U.S.C.A. § 270a et seq. Several other creditors intervened and Ross and his surety were made third party respondents. The attorney for Seaboard Surety also represented Ross. After answering, he filed a counterclaim asking for Ross' earnings under the subcontract. The other creditors settled their claims, and it was agreed that the cause of action raised by the counterclaim would be tried as an original Miller Act case. This was case number 817.

A few days before the date set for trial, Ross employed a new attorney. The new attorney prepared an amendment to the counterclaim asking for damages caused by the delay in performance and the delay in the payment of the $45,000. The district judge discussed the matter in chambers with counsel, discussed the continuance that would be necessary if

the amendment were allowed, pointed out that case 817 was under the Miller Act, and refused to allow the amendment.[1]

Ross' attorney then filed the present action, case 889, as a separate suit in the same court. The present suit sets forth the same cause of action that Ross tried to assert by the amendment that was not allowed in case 817.

Case 817 was tried on the counterclaim for earnings under the subcontract. The jury awarded approximately $27,000 to Ross and Seaboard Surety on the counterclaim.[2]

The district judge held a pre-trial hearing for case 889. The issues were drawn and the case was set for a hearing on the merits. When the case was continued and the hearing date was reset it came up before another district judge. He too held a pre-trial hearing, but no formal order was prepared. At the trial, the district court granted Bateson's motion for a directed verdict. Ross appeals from this judgment.

Ross assigns fifteen errors.[3] We shall confine our consideration to the first two as they present the primary question in this case: Is the judgment in case 817 a bar to the present action?

Ross contends that case 817 is not a bar because: (1) Ross was not the real party in interest in case 817, since Seaboard Surety received all of the money that was recovered by the judgment in that case; (2) the issues are not the same in the two cases, because the counterclaim in case 817 did not ask for damages; (3) even if Bateson's liability for delaying payment and delaying performance should have been litigated in case 817, it does not bar the present action, since Ross tried to assert these damages by amendment in case 817, but the amendment was not allowed. Bateson's main contentions are three-fold: (1) The judgment for Ross in case 817 bars the present suit; (2) Ross is precluded from recovering damages because of his failure to comply with a provision of the subcontract requiring written notice of any damages suffered within ten days from the beginning of the damages; (3) Ross is also precluded by another provision of the subcontract requiring a full accounting of damages within ten days from the date that the extent of the damages is known.

Bateson argues that case 817 is a bar to this suit because: (1) Suing and recovering on the subcontract in case 817 constituted an election of remedies that is binding on Ross; (2) allowing recovery in this suit for damages would violate the rule against splitting a cause

---

1. Bateson's attorneys insist that the amendment was not allowed because it was interposed at such a late date that a continuance would have been necessary. At the trial Bateson's attorneys objected to the amendment. They now assert that their objection was solely on the grounds that a continuance would have been necessary. They were opposed to a continuance because they had brought witnesses from Texas and a continuance would have involved considerable more expense for them. They concede that it would be inconsistent for them to have objected on the grounds that such a claim was not properly joined and now assert that it should have been litigated in case 817. However, there seems to have been a serious doubt in the mind of the judge in case 817 that this cause of action properly belonged in a suit under the Miller Act. "If the counterclaim is dismissed not on the merits but because it is not the proper subject of counterclaim, the defendant is not precluded from bringing an action on the claim." Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 28 (1942). See also Restatement, Judgments § 59.

2. Ross was entitled to approximately $45,000 for additional work that he had performed. Bateson had made advances to Ross during the time the construction job continued. Ross and Seaboard asked for $40,000 in the counterclaim, and after off-setting the advancements, the court allowed a judgment of $27,669.98 against Bateson.

3. Errors three through fourteen concern the trial court's sustaining objections to evidence offered by Ross to show that time was of the essence and to show that Bateson had actual notice of the losses Ross was incurring because of the delay. Assigned error fifteen complains of the trial court's refusal to allow this appeal in forma pauperis.

of action; (3) Ross' action for damages was a compulsory counterclaim in case 817 and as it was not presented in that case, it is lost.

■ The trial court, in sustaining Bateson's motion for a directed verdict, relied on Baird v. United States, 1878, 96 U.S. 430, 24 L.Ed. 703, and Continental Casualty Company v. Schaefer, 9 Cir., 1949, 173 F.2d 5, certiorari denied 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745. We do not believe that either of these cases are controlling. In the Baird case the government had ordered five locomotives and had contracted to pay a certain price for the locomotives. The contract also contained a provision that the government would pay damages for preference of their order and the amount of any advances in labor and materials over the cost as estimated on a certain date. The government awarded the contractor $97,000 for the advances in cost. He accepted this amount by cashing the government check. The contractor then sued and recovered for damages caused by giving preference to the government order. In a later suit by the contractor for the difference between what he had claimed as advances in cost and the $97,000 paid him by the government, the Supreme Court held that the contractor could not recover, because he had already received satisfaction of this claim when he accepted the amount tendered by the government. The second reason for denying recovery was that the former suit for preference damages barred this suit for advances, since an action for part of an entire indivisible demand bars a later action for another part of the same demand. The present case differs from Baird in that Ross has not received any satisfaction for the damages for delay in payment or delaying his performance. In addition, in Baird the demands in the two suits both arose out of the contract.

Ross sued in case 817 for the value of his services under the contract, and the present suit is in tort for damages caused by late payment and by delaying his performance. The two different causes of action asserted by Ross are not component parts of one indivisible cause of action.

Continental Casualty Company v. Schaefer did not concern the question of whether a former suit bars a suit for damages. The trial judge in this case interpreted Continental as holding that damages may be recovered in a Miller Act suit. We have no quarrel with this interpretation, but it is not decisive as far as the question now facing the court is concerned. To say that damages could have been recovered in case 817 is quite different from saying that these damages must have been recovered in that suit or they are barred forever.

An extensive discussion of res judicata, the splitting of a cause of action, election of remedies, and compulsory counterclaim is not necessary to the disposition of this case. The problem is clear-cut. The solution is clear. Ross alleges a cause of action for damages suffered as a result of Bateson's delaying his performance under the subcontract and delaying the payment of the compensation agreed upon for the additional work performed by Ross. Ross has never had an opportunity to present this cause of action before a court.

■■ Res judicata does not bar the present suit, since this action concerns a different issue from the issue litigated in case 817.[4] The rule against splitting a cause of action does not prevent this suit. Ross had two causes of action.[5] The first was for labor and materials due him under the supplemental agreement reached by the parties. This cause of action was adjudicated by the court in case 817.

---

4. The trial judge in this case specifically recognized that the question of whether Ross sustained damages as the result of interference and delays occasioned by Bateson was not submitted to the jury in case 817.

5. An action for work performed under a contract and a claim for damages for its breach are separate causes of action and may be sued on separately. Recovery of a judgment for one of such causes will not bar subsequent action on the other. 50 C.J.S., Judgments § 674.

The second cause of action is for damages caused by Bateson's delaying payment and delaying performance. This cause of action has not been litigated. The theory of election of remedies does not bar the present suit. The theory presupposes that the choice of remedies was voluntary. Ross had no voluntary choice. When he attempted to assert this cause of action for damages by amending his counterclaim in case 817, he was not allowed to do so. The federal rules of civil procedure requiring compulsory counterclaims in certain instances do not bar this suit. Though the general policy of the federal rules is to discourage separate actions which create a multiplicity of suits, we should not become so engrossed with this idea of preventing multiple suits that we deprive a litigant of his day in court. If the present action fits the definition of a compulsory counterclaim, then it should have been allowed in case 817. If it is a voluntary counterclaim, Ross did not have to assert it in case 817, and it is still a viable cause of action.

We do not decide the other alleged errors presented by the brief of Ross. The question of the admissibility of evidence and the effect of Ross' failure to comply with the written notice requirements of the subcontract are within the purview of the trial judge.[6] We hold simply that Ross has alleged a cause of action and has not had his day in court on this cause. He is entitled to be heard.

We reverse and remand.

JONES, Circuit Judge (dissenting).

In directing a verdict for the appellee the Judge of the District Court said:

"As I understand the law, if a person, a party to a contract, brings a suit to recover damages resulting from a breach of that contract, and if that contract is entire in its obligations, then all elements of damage arising out of any breach of that contract must be presented in that law suit. The underlying theory of it is that there must be an end to law suits and to litigation. The parties must be able to be set at repose sometime and that multiple claims ought not to be litigated year in and year out arising out of one contract."

With these conclusions I am in agreement. If there was an error committed, and I do not say there was, it was in the refusal of the court to permit the appellant to amend in case 817. I repectfully dissent.

---

6. We also have not considered assigned error fifteen which complains of the trial judge's refusal to allow this appeal in forma pauperis. The trial judge specified that Ross appear before him and he questioned concerning his financial condition. Ross failed to appear. It was within the allowable discretion of the trial judge to deny the motion for an appeal in forma pauperis.